McGREGOR W. SCOTT
United States Attorney
KIMBERLY A. SANCHEZ
ROSS PEARSON
ANGELA SCOTT
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

MARIANNE SHELVEY
Trial Attorney
Organized Crime and Gang Section
Criminal Division

Attorneys for Plaintiff
United States of America

**FILED**
SEP 13 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

1: 1 8 CR - 0 0 2 0 7 DAD BAM

INDICTMENT                                   1

| UNITED STATES OF AMERICA, | CASE NO. |
|---|---|
| Plaintiff, | VIOLATIONS: 18 U.S.C. § 1959(a)(3) and 2 – Assault with a Dangerous Weapon in Aid of Racketeering (Counts 1 and 2); |
| v. | |
| 1) DENIS BARRERA-PALMA, Aka, "Gunner,' | 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, Cocaine and Marijuana (Count 3) |
| 2) MARIO ALEXANDER GARCIA, Aka, "Ton," | |
| 3) FRANCISCO LIZANO, Aka, "Activo," Aka, "Javi," | 18 U.S.C. § 922(g)(5)(A) – Alien in Possession of a Firearm (Counts 4 and 5) |
| 4) JEFFERSON GUEVARA, Aka, "Chino," | |
| 5) EVER MEMBRENO, Aka, "Canecho," | |
| 6) EDGAR TORRES-AMADOR, | |
| 7) LORENZO AMADOR, Aka, "Catracho," | |
| 8) JOSE WILSON NAVARETTE-MENDEZ, Aka, "Wilson," | |
| 9) DENIS RODOLFO ALFARO-TORRES, Aka, "Payin," | |
| 10) SANTOS HAMILTON BONILLA, Aka, "Cuervo," | |
| 11) HENRY ROGELIO LARA BONILLA, Aka, "Repollo," Aka, "Repollin," | |
| 12) CHRISTIAN ELISEO HIDALGO REYES, Aka, "Guero," Aka, "Huero," Aka, "Werito," Aka, "White Boy," | |
| 13) MARVIN VILLEGAS-SEGOVIA, Aka, "Chaparro," | |
| 14) BRENDA YAJAIRA MORALES, Aka, "Yari," | |
| 15) CLAUDIA ELIZABETH LIZAOLA, Aka, "Maniaka" | |
| 16) OSCAR ANTONIO REYES, Aka, "Tamagas" | |
| DEFENDANTS. | |

# INDICTMENT

The Grand Jury charges:

At all times relevant to this Indictment:

## I. THE ENTERPRISE

1. *La Mara Salvatrucha*, also known as MS-13 ("MS-13"), is a violent criminal street gang (hereinafter referred to as "MS-13"), composed primarily of immigrants or descendants of immigrants from El Salvador, whose members and associates engage in acts of violence, including kidnapping, murder, and extortion, narcotics sales, illegal possession of firearms, and other crimes, often with the purpose of intimidating rival gang members, victims of extortion, and members of the community, and to protect their "turf" and fellow gang members.

2. Mara Salvatrucha was formed in Los Angeles, California in the mid-1980s by immigrants fleeing the civil war in El Salvador. Once in Los Angeles, they organized themselves into a group called Mara Salvatrucha, which was initially largely composed of Salvadoran immigrants. The name "Mara Salvatrucha" was a combination of several slang terms: "Mara" is a Central American term for gang or group; and the phrase "Salvatrucha" was a combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up." In the 1990s in Los Angeles, Mara Salvatrucha distinguished itself by committing brutal acts of violence against rival gang members and non-gang members. In the mid-1990s, Mara Salvatrucha became associated with the Mexican Mafia, commonly referred to as "la Eme" (which translates in English to "the M"), and added the number "13" to its name. The number "13" marks the 13th letter of the alphabet: "M." While MS-13 originated in Los Angeles, over the years, MS-13 spread as its members were deported to El Salvador and because its members traveled to other locations in the United States and abroad. As a result, in addition to operating in Los Angeles, MS-13 operates nationally and internationally, with more than ten thousand members regularly conducting gang activities in at least 42 states and Washington, D.C., and with thousands more conducting gang activities in Central America and Mexico.

3. MS-13, nationally and internationally, including Los Angeles, is largely comprised of persons from Central America, including El Salvador, Honduras, and Guatemala. Although each MS-13 locale has a common origin, MS-13 in Los Angeles operates differently than in other locales. Notwithstanding, clique names in other parts of the United States are often named for existing cliques in

Los Angeles. At times, MS-13 members from other geographic locations travel to Los Angeles to participate in leadership meetings; however, MS-13 in Los Angeles is independent, self-governing, and makes its own decisions. Conversely, MS-13 members in Los Angeles are sometimes called upon to provide input in other parts of the country. Also, MS-13 members in Los Angeles distribute drugs from Los Angeles to other parts of the country.

4. In Los Angeles, MS-13 operates under the "Los Angeles Program," which is distinct from programs in El Salvador, Honduras, Guatemala, and other parts of the United States, whereby its leaders and members make all decisions concerning how and when a new person becomes a member of MS-13, how MS-13 operates, when discipline is meted out, when a clique is responsible for paying its extortionate rent payments, the geographical boundaries of each clique, and the identity of the shot callers and leaders. MS-13 operates through subsets, known as "cliques," which are usually named for a street within a clique's territory, or for the neighborhood in which the clique operates. MS-13 has more than 10 cliques operating in Los Angeles, including, but not limited to, Parkview Locos Salvatrachos ("PVLS") and Francis Locos Salvatruchos ("FLS").

5. A clique adds new members through an initiation ritual known as "jumping in," during which several existing MS-13 members beat up a prospective MS-13 member for 13 seconds. Once jumped in, an MS-13 member is expected to participate fully in MS-13's criminal activities.

6. Historically, MS-13 members signified their membership with tattoos reading "Mara Salvatrucha," "MS," "MS-13," or other variations of the gang's name; however, the recent trend is for MS-13 members to avoid such tattoos to help avoid detection by law enforcement. MS-13 members typically refer to other members by their monikers, or nicknames, and often do not know fellow gang members' legal names.

7. MS-13 members write or paint graffiti in the areas they control to identify the area as controlled by MS-13.

8. MS-13 has a self-imposed code of conduct, which is imposed and enforced to maintain compliance among its members. MS-13 enforces its rules and promotes discipline among its members by imposing monetary fines and threatening and committing acts of violence against members who break the rules. This is known as attending court, being "courted," or being "regulated." MS-13,

through its leadership or individual cliques, can vote for MS-13 members to be disciplined for violating MS-13's rules or code of conduct. Depending on the severity of the violation, MS-13, through its leadership or individual cliques, will decide whether the violator will receive a beating for 13, 26, or 39 seconds, all multiples of 13, and will select at least three to four MS-13 members to administer the beatings, with one member counting aloud the seconds. Additionally, for even more serious violations of MS-13's rules, MS-13, through its leadership or individual cliques, may vote to introduce weapons into the beatings, to include knives, bats and/or pipes. Once an MS-13 member has been disciplined, the individual cliques may also vote to eject the disciplined member from their cliques. If a member is voted out of the clique, he/she must be "jumped out" of the clique, which means that member will receive another beating.

9. MS-13 has zero tolerance for members and associates who cooperate with law enforcement. Once MS-13 has evidence that someone has cooperated with law enforcement, by receiving and reviewing law enforcement reports or recordings of interviews, MS-13 issues a "green light" as to that person, which is an order that if any MS-13 member sees the person who is allegedly or actually cooperating with law enforcement, that person is to be killed on sight.

10. MS-13 members also engage in acts of violence against innocent citizens and rival gang members in their territory. Participation in violent acts increases the respect accorded to members who commit violent acts. Additionally, commission of violent acts by MS-13 members enhances the gang's overall reputation for violence in the community, resulting in the intimidation of citizens in MS-13's territory.

11. MS-13 members sometimes engage in money-making activities for the gang. Individual MS-13 members who sell narcotics are often required to provide a portion of their narcotics proceeds to the shot caller of the clique. This money is used by the shot caller for a variety of purposes, including paying the clique's "rent" or dues to the overall MS-13 leader, paying legal fees for MS-13 members in need, helping MS-13 members in El Salvador and other points abroad, and purchasing weapons that are maintained by the clique in its territory for protection. If a clique member earns money for the clique by selling drugs or other criminal ventures, and contributes a portion to the shot caller, this money is oftentimes considered their rent contribution to the clique. MS-13 also derives income from the

extortion of food vendors who operate in MS-13 controlled territory. On a clique level, the clique shot caller identifies targets for extortion and coordinates which clique member is authorized to collect extortion from each vendor. MS-13 extorts both legitimate and illegitimate businesses alike. These businesses are often owned or run by illegal immigrants, who rarely report this extortion to law enforcement, despite the threats of violence which accompany the extortion.

## II. MS-13 IN MENDOTA, FRESNO COUNTY

12. Two cliques of MS-13, PVLS and VLS, have been operating in Mendota and Los Angeles since at least July 2015.

13. In Mendota, the primary rival to MS-13 is the Bulldogs criminal street gang. The MS-13 cliques in Mendota view the Bulldogs as a threat to the El Salvadoran community and regularly participate in patrols to attack Bulldog gang members. MS-13 uses this violence to expand its control of Mendota and to rid the town of rival gangs.

14. MS-13 members in Mendota have a hierarchy within each clique. The lowest of the members are referred to as "Parros." Parros take orders from higher ranking gang members and are responsible for doing errands and committing crimes on behalf of the gang. The next level, above Parros, are "Chequeos." Chequeos also take orders from higher ranking gang members and are responsible for fighting with rival gang members and expanding the gang's territory. Parros and Chequeos take orders from "Homeboys." Homeboys are the leaders, or shot callers, of the gang and direct the gang's activity. Before an MS-13 member can become a Homeboy, he must commit three confirmed murders that benefit the gang.

15. As a whole, MS-13 is united and members are not confined to committing crimes in their specific cliques or territories. This phenomenon has been clearly evidenced with MS-13 members in Mendota. While PVLS and VLS are the two primary cliques, MS-13 members in Mendota have demonstrated on more than one occasion that they work collectively and commit crimes together with other MS-13 members from other cliques such as the Fulton Locos Salvatruchos ("Fulton"), Francis Locos Salvatruchos ("Francis"), and Dalmacias Locos Salvatruchos ("DCLS") cliques.

16. The collaborative criminal efforts of the individual cliques gives each individual clique the force multiplier of the collective resources and manpower.

17. MS-13 gang members in Mendota often receive instructions from higher ranking members in Los Angeles, Santa Maria, and Oakland. Many times, these instructions involve traveling to Los Angeles or Oakland to support MS-13 criminal activities, including conducting assaults, helping wanted subjects travel to escape law enforcement, and transporting drugs and firearms for MS-13 members.

18. Denis BARRERA-PALMA, aka "Gunner"; Claudia LIZAOLA, aka "Maniaka"; Jefferson GUEVARA, aka "Chino"; Denis Rodolfo ALFARO-TORRES, aka "Payin;" Jose Wilson NAVARETTE-MENDEZ, aka "Wilson"; Ever MEMBRENO, aka "Canecho"; Christian Eliseo HIDALGO REYES, aka "Guero," "Huero," "Werito," "White Boy;" Santos Hamilton BONILLA, aka "Cuervo;" Henry Rogelio Lara BONILLA, aka "Repollo," "Repollin;" Francisco LIZANO, aka "Javi," "Activo;" Mario Alexander GARCIA, aka "Ton;" Marvin VILLEGAS-SEGOVIA, aka "Chaparro;" Brenda Yajaira MORALES, aka "Yari"; EDGAR TORRES-AMADOR; LORENZO AMADOR, aka "Catracho"; OSCAR ANTONIO REYES, aka, "Tamagas," the defendants, and others known and unknown to the Grand Jury, are members and associates of MS-13.

### III. PURPOSES OF THE ENTERPRISE

19. The purposes of the MS-13 Enterprise included:

   a. Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

   b. Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, extortion, drug trafficking, robbery, and other criminal activities;

   c. Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

   d. Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and in El Salvador;

   e. Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

  f. Hindering, obstructing, and preventing law enforcement officers from: identifying participants in the enterprise's criminal activities; apprehending the perpetrators of those crimes; and successfully prosecuting and punishing the offenders.

### IV. MEANS AND METHODS OF THE ENTERPRISE

20. Among the means and methods by which the members and associates of MS-13 conduct and participate in the conduct of the affairs of the enterprise were the following:

  a. The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities; to promote and enhance its prestige, reputation, and position in the community; and to discipline gang members who had been disloyal or had violated gang rules;

  b. The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 leaders, members, and associates who had been arrested or incarcerated; disciplining MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes;

  c. The members and associates of MS-13 also communicated with other MS-13 members in Texas and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members, throwing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13;

  d. The members and associates of MS-13 financed the enterprise through a variety of activities, including the extortion of money—sometimes referred to as "paying rent"—from gang members and from legitimate and illegitimate businesses operating in the gang's territory, as well as through the commission of robberies;

e.  The members and associates of MS-13 distributed and agreed to distribute controlled substances on behalf of the gang;

f.  The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States and in El Salvador;

g.  The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members;

h.  The members and associates of MS-13 investigated rival gang members or other persons targeted for violence; obtained information about such targets, including locations frequented by them; and used such information in their plans to attack such targets; and

i.  The members and associates of MS-13 would and did agree that acts of murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

COUNT ONE: [18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in Aid of Racketeering]

The Grand Jury further charges: T H A T

> DENIS BARRERA-PALMA, aka "Gunner," and
> EDGAR TORRES-AMADOR,

Defendants herein, as follows:

21. Paragraphs 1 through 20 of this Indictment are incorporated herein.

22. On or about May 14, 2018, in the county of Fresno, State and Eastern District of California, together with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, while aiding and abetting one another, did assault Victim-1 with a dangerous weapon, that is, a pipe, in violation of California Penal Code § 245(a)(1).

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

COUNT TWO: [18 U.S.C. §§ 1959(a)(3) and 2 -- Assault with a Dangerous Weapon in Aid of Racketeering]

The Grand Jury further charges: T H A T

LORENZO AMADOR,
AKA, "CATRACHO,"

defendant herein, as follows:

23.    Paragraphs 1 through 20 of this Indictment are incorporated herein.

24.    Defendant herein, on or about August 12, 2018, in the County of Fresno, State and Eastern District of California, together with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, while aiding and abetting one another, did assault Victim-2 with a dangerous weapon, that is, a knife, in violation of California Penal Code § 245(a)(1).

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

COUNT THREE: [21 U.S.C. §§ 846 and 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, Cocaine and Marijuana]

The Grand Jury further charges: T H A T

DENIS BARRERA-PALMA,
Aka, "Gunner,'
MARIO ALEXANDER GARCIA,
Aka, "Ton,"
FRANCISCO LIZANO,
Aka, "Activo,"
Aka, "Javi,"
JEFFERSON GUEVARA,
Aka, "Chino,"
EVER MEMBRENO,
Aka, "Canecho,"
LORENZO AMADOR,
Aka, "Catracho,"
JOSE WILSON NAVARETTE-MENDEZ,
Aka, "Wilson,"
DENIS rodolfo ALFARO-TORRES,
Aka, "Payin,"
SANTOS HAMILTON BONILLA,
Aka, "Cuervo,"
HENRY ROGELIO LARA BONILLA,
Aka, "Repollo,"
Aka, "Repollin,"
CHRISTIAN ELISEO HIDALGO REYES,
Aka, "Guero,"
Aka, "Huero,"
Aka, "Werito,"
Aka, "White Boy,"
MARVIN VILLEGAS-SEGOVIA,
Aka, "Chaparro,"
BRENDA YAJAIRA MORALES,
Aka, "Yari,"
CLAUDIA ELIZABETH LIZAOLA,
Aka, "Maniaka"
OSCAR ANTONIO REYES,
Aka, "Tamagas"

defendants herein, as follows:

25. Paragraphs 1 through 20 of this Indictment are incorporated herein.

26. Defendants herein, beginning at a date unknown, but no later than on about May 2017 and continuing until August 30, 2018, in the County of Fresno, State and Eastern District of California and elsewhere, did knowingly and intentionally conspire and agree with each other, and with other persons known and unknown to the grand jury, to distribute and possess with intent to distribute a

mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, §§ 846, and 841(a)(1).

COUNT FOUR: [18 U.S.C. § 922(g)(5)(A) – Alien in Possession of a Firearm]

The Grand Jury further charges: T H A T

FRANCISCO LIZANO,
AKA, "JAVI," "ACTIVO,"

defendant herein, on or about August 30, 2018, in the County of Fresno, State and Eastern District of California, then being an alien illegally and unlawfully in the United States, did knowingly possess a firearm, specifically a Glock Model 17 semiautomatic pistol, in and affecting commerce, in that said firearm had previously been transported in interstate and foreign commerce, in violation of Title 18, United States Code, § 922(g)(5)(A).

COUNT FIVE: [18 U.S.C. § 922(g)(5)(A) – Alien in Possession of a Firearm]

The Grand Jury further charges: T H A T

BRENDA YAJAIRA MORALES,

defendant herein, on or about August 30, 2018, in the County of Fresno, State and Eastern District of California, then being an alien illegally and unlawfully in the United States, did knowingly possess a firearm, specifically a Jimenez Arms Inc. 9 mm pistol, in and affecting commerce, in that said firearm had previously been transported in interstate and foreign commerce, in violation of Title 18, United States Code, § 922(g)(5)(A).

FORFEITURE ALLEGATION: [18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of the offense alleged in Count Three of this Indictment, defendants DENIS BARRERA-PALMA, MARIO ALEXANDER GARCIA, FRANCISCO LIZANO, JEFFERSON GUEVARA, EVER MEMBRENO, LORENZO AMADOR, JOSE WILSON NAVARETTE-MENDEZ, DENIS RODOLFO ALFARO-TORRES, SANTOS HAMILTON BONILLA, HENRY ROGELIO LARA BONILLA, CHRISTIAN ELISEO HIDALGO REYES, MARVIN VILLEGAS-SEGOVIA, BRENDA YAJAIRA MORALES, CLAUDIA ELIZABETH LIZAOLA, and OSCAR ANTONIO REYES, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853(a), the following property:

    a. All right, title, and interest in any and all property involved in violation of Title 21, United States Code, Section 841(a)(1), or conspiracy to commit such offense, for which defendants are convicted, and all property traceable to such property, including the following: all real or personal property, which constitutes or is derived from proceeds obtained, directly or indirectly, as a result of such offense; and all property used, or intended to be used, in any manner or part to commit or to facilitate the commission of the offense.

    b. A sum of money equal to the total amount of proceeds obtained as a result of the offense, or conspiracy to commit such offense, for which defendants are convicted.

2. Upon conviction of the offenses alleged in Counts Four and Five of this Indictment, defendants FRANCISCO LIZANO AND BRENDA YAJAIRA MORALES shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in or used in the knowing commission of the offenses.

2. If any property subject to forfeiture, as a result of the offenses alleged in Counts Four and Five of this Indictment, for which defendants are convicted:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    c.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.
/s/ Signature on file w/AUSA

_____
FOREPERSON

McGREGOR W. SCOTT
United States Attorney

By **KIRK E. SHERRIFF**
_____
KIRK E. SHERRIFF
Assistant U.S. Attorney
Chief, Fresno Office

INDICTMENT  15