UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DENIS BARRERA-PALMA, et al.,<br><br>Defendants. | No.  1:18-cr-00207-DAD-SKO<br><br>ORDER DENYING DEFENDANT LORENZO AMADOR'S MOTION *IN LIMINE* AND MOTION TO SEVER TRIAL AND GRANTING GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT ENTERPRISE AND RACKETEERING EVIDENCE<br><br>(Doc. Nos. 301, 351) |

Pending before the court is a motion *in limine* to exclude evidence of an uncharged murder as unduly prejudicial under Federal Rule of Evidence 403 brought on behalf of defendant Lorenzo Amador, as well as defendant's motion to sever, and the government's motion *in limine* seeking an order permitting admission of certain enterprise and racketeering evidence at trial. (Doc. Nos. 301, 351.)  On June 26, 2020, the court heard argument on the motions by way of videoconference with Assistant U.S. Attorney Ross Pearson appearing on behalf of the government and attorney W. Scott Quinlan appearing on behalf of defendant Amador.  (Doc. No. 403.)[1]  For the reasons discussed below, defendant Amador's motion *in limine* will be denied and

---

[1]  In addition, the following defense counsel also appeared at the hearing:  attorney E. Marshall Hodgkins, III for defendant Lizano; attorney Barbara O'Neill for defendant Guevara; attorney Michael Aed for defendant Membreno; attorney Roger Wilson for defendant Navarette-Mendez; attorney John Garland for defendant Alfaro-Torres; attorney Roger Bonakdar for defendant Bonilla; and attorney Daniel Harralson for defendant Hidalgo.  Some of these defendants had joined in defendant Amador's pleadings. (*See* Doc. Nos. 360, 362, 366, 372, and 384.)

1

the government's motion *in limine* will be granted.

**BACKGROUND**

The defendants, all alleged members of La Mara Salvatrucha (also known as MS-13), have been charged in a five-count indictment. (*See* Doc. No. 125, "Indictment.") In Count One defendants Barrera-Palma and Torres-Amador are charged with assault with a pipe in aid of racketeering in violation of the Violent Crimes in Aid of Racketeering ("VICAR") statute set forth in 18 U.S.C. § 1959. (Indictment at 9.)[2] In Count Two defendant Lorenzo Amador ("Amador") is charged with assault with a knife in aid of racketeering in violation of 18 U.S.C. § 1959 (VICAR). (*Id.* at 10.) In Count Three defendant Amador and 14 other defendants are charged with conspiracy to distribute and to possess with intent to distribute methamphetamine, cocaine, and marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Indictment 11–12.)[3] In Counts Four defendant Lizano is charge with being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). (Indictment at 13.)[4] Thus, defendant Amador is the only remaining defendant in this case still facing a charge of assault in aid of racketeering in violation of 18 U.S.C. § 1959 (VICAR). (*See* Indictment, Count Two).

**DISCUSSION**

A. **Admissibility of Evidence of Uncharged Murder**

The United States has indicated its intent to offer evidence at trial related to the uncharged murder of an individual known as "Winnie the Pooh" by members of MS-13. (Doc. No. 351 at 4.) It is undisputed that defendant Amador was not directly involved in the Winnie the Pooh murder. He argues that this evidence should therefore be excluded from evidence at his trial pursuant to Federal Rule of Evidence 403. (Doc. No. 301.) Under Rule 403, a district court may

---

[2] Both defendant Barrera-Palma and defendant Torres-Amador s have pleaded guilty to Count One of the indictment and are awaiting sentencing. (Doc. Nos. 312, 316.)

[3] Five defendants have pleaded guilty to Count Three and are awaiting sentencing, while that charge remains pending against defendant Amador and several other defendants. (Doc. Nos. 236, 272, 275, 276, 312.)

[4] Defendant Morales was charged with this same offense in Count Five of the indictment but entered a guilty plea to that charge. (Doc. No. 250.)

exercise its discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" The government moves for an order allowing evidence of the Winnie the Pooh murder to be admitted at defendant Amador's trial on the ground that it is "intrinsic" evidence of an element that the government must prove in order to sustain his conviction on Count Two in which Amador is charged with assault in aid of racketeering in violation of 18 U.S.C. § 1959. (Doc. No. 351 at 6–7.) More specifically, the government argues that evidence of the Winnie the Pooh murder is essential and will help prove that MS-13 is an "enterprise" engaged in "racketeering activity." (*Id.*) Defendant Amador argues that because there is no evidence tying him to the Winnie the Pooh murder, if that evidence is admitted at his trial on the VICAR charge, it will unfairly prejudice him. (Doc. No. 301 at 2.) Defendant Amador also argues that evidence of the Winnie the Pooh murder is not necessary to the government's case against him as to Count Two of the indictment, and that the probative value of such inherently prejudicial evidence must be assessed accordingly. (*Id.*)

      Evidence of the Winnie the Pooh murder is highly probative of the first two elements of the VICAR violation with which defendant Amador is charged , i.e., whether MS-13 is an "enterprise" engaging in "racketeering activity." *See* Ninth Circuit Manual of Model Jury Instruction § 8.151. Evidence of that murder is also potentially relevant to prove that defendant Amador committed an assault with a knife as alleged in Count Two "to gain entrance to, or to maintain, or to increase his position in the enterprise." *See id.*; *United States v. Banks*, 514 F.3d 959, 968–70 (9th Cir. 2008) (holding some relationship is required between the VICAR crime and the enterprise itself, because RICO does not "turn every criminal act by a gang member into a federal crime"). In seeking admission of the Winnie the Pooh murder evidence, the government relies on cases in which courts have concluded that the prosecution may introduce evidence of uncharged murders not involving the defendant in order to prove the existence of a RICO "enterprise" and its "racketeering activity." *See, e.g.*, *United States v. Finestone*, 816 F.2d 583, 586–87 (11th Cir. 1987); *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991); *United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994) ("This court has held that proof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature

of the enterprise."). These cases generally support the government's motion *in limine* seeking introduction of the Winnie the Pooh murder evidence in its prosecution of defendant Amador on Count Two of the indictment here to show how the MS-13 racketeering enterprise operated, the rules that governed its operation and its structure and chain of command.[5]

On the other hand, there is no doubt that admitting evidence of uncharged murders not involving a defendant, as is the case here, is potentially prejudicial. In arguing for exclusion of the Winnie the Pooh murder evidence, defendant Amador points this court to the decision in *United States v. Flynn*, 852 F.2d 1045, 1054 (8th Cir. 1988), *rev'd on other grounds*, *Nat'l Org. For Women, Inc. v. Scheidler*, 510 U.S. 249 (1994). There, the district court properly admitted "overwhelming evidence" of several prior murders involving the defendant, but was found to have erred in admitting evidence of another murder conspiracy not involving the defendant because of the prejudicial nature of that evidence. *Id.* (concluding that the error did not require the granting of a new trial). The Eight Circuit concluded that while evidence related to a murder conspiracy not involving the defendant did tend to prove the enterprise element of a RICO charge, "[t]he evidence obviously carried a prejudicial impact, yet in no way did it connect Flynn to the enterprise." *Id.* Noting that in light of the overwhelming evidence presented at trial, the challenged evidence "was not necessary to prove the existence of the enterprise," that court concluded, "[i]ts prejudicial value outweighed its probative value." *Id.*

Here, application of Rule 403 does not warrant exclusion of the evidence related to the Winnie the Pooh murder at defendant Amador's trial. The government argues the Winnie the Pooh murder is highly probative of MS-13's chain of command. (*See* Doc. No. 283 at 2.) The government alleges defendant Denis Barrera-Palma, a high-ranking leader in MS-13, orchestrated the kidnapping and murder of Winnie the Pooh, "with lower-level members carrying out acts of

---

[5] The government reliance on decisions admitting evidence of uncharged murders where there is evidence that the defendants themselves were allegedly involved in the uncharged murders are obviously distinguishable from this case and therefore fail to support the government's argument. *See, e.g.*, *United States v. Fernandez*, 388 F.3d 1199, 1217, 1224 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005); *United States v. Williams*, No. 3:13-cr-00764-WHO, 2017 WL 4310712, at *11 (N.D. Cal. Sept. 28, 2017); *United States v. Henley*, 766 F.3d 893, 902, 914 (8th Cir. 2014).

4

1   violence and reporting those acts" back to Barrera-Palma. (*Id.*)  Of all the evidence it intends to
2   offer at trial, the government maintains that there is no other evidence as probative of MS-13's
3   chain of command as the evidence relating to the Winnie the Pooh murder.  (*See generally id.*;
4   Doc. No. 351.)  At the hearing on the motions *in limine*, the government argued that evidence
5   related to Count Two of the indictment will show that defendant Amador committed an assault
6   with a deadly weapon against a member of a gang that was a rival of MS-13, and that this assault
7   was subsequently reported back to defendant Barrera-Palma.  (*See also* Doc. No. 351 at 3.)  The
8   Winnie the Pooh murder evidence will establish the chain of command in MS-13 for committing
9   violent crimes against others, and, according to the government, that defendant's act of assault as
10  charged in Count Two was carried out consistent with that structure.  Based upon this proffer, the
11  undersigned concludes that evidence relating to the Winnie the Pooh murder is highly probative
12  of MS-13's structure and how it functions as an "enterprise."
13      The risk of unfair prejudice flowing from the Winnie the Pooh murder evidence does not
14  compel exclusion of that evidence.  First, it goes without saying that this evidence will be
15  prejudicial to defendant Amador, but the relevant question is whether it will *unfairly* prejudice
16  him.  Defendant is alleged to have willingly committed a violent attack against a rival gang
17  member for the purpose of furthering his status in the MS-13 gang which is operating as
18  racketeering enterprise.  Evidence of that gang's conduct, including acts of violence, even if
19  prejudicial to defendant Amador is not unfairly so.  *See United States v. Matera*, 489 F.3d 115,
20  121 (2d Cir. 2007) ("When a defendant engages in a criminal enterprise which involves very
21  serious crimes, there is a likelihood that evidence proving the existence of the enterprise through
22  its acts will involve a considerable degree of prejudice.  Nonetheless, the evidence may be of
23  important probative value in proving the enterprise.").  Second, a limiting jury instruction
24  regarding the Winnie the Pooh murder evidence should serve mitigate the risk of any unfair
25  prejudice to defendant Amador.  *See United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018)
26  (discussing in a RICO gang prosecution why the accidental admission of evidence regarding an
27  uncharged murder committed by non-defendants did not require the granting of a new trial in part
28  /////

because evidence was not introduced to "sow confusion about which crimes [the defendant] stood accused of" and because a limiting instruction was given).

Because the probative value of the Winnie the Pooh murder evidence is not "substantially outweighed" by the risk of unfair prejudice, defendant Amador's motion to exclude this evidence from admission at his trial will be denied and the government's motion to admit the evidence will be granted.

**B.     Admissibility of Other VICAR Evidence**

In connection with the VICAR charge alleged in Count Two of the indictment, the government moves to admit other instances of MS-13's "racketeering activity," including specific conspiracies by MS-13 gang members to engage in drug trafficking, one of which involves defendant Amador, and assault. (Doc. No. 351 at 4.) In addition, now that co-defendants have pleaded guilty to the assault in Count One, the government seeks to include evidence of that offense as a predicate for the charged "racketeering activity" as well. (*Id.*) Finally, the government moves to admit "non-exhaustive" examples of MS-13's status as an "enterprise," "including evidence about MS-13 rules, members, discipline, signs of affiliation, and other enterprise evidence." (*Id.* at 5.) Defendant does not oppose admission of this evidence. (*See passim* Doc. No. 355.) Therefore, the government's motion seeking an order authorizing admission of this evidence at trial will be granted as unopposed.

**C.     Motion to Sever**

Defendant Amador initially moved to sever his entire case from that of his co-defendants. (Doc. No. 392 at 3.) However, at the hearing on the pending motions *in limine*, the court inquired of defendant Amador's counsel what his position on severance would be if the court were to admit evidence of the Winnie the Pooh murder. In response, defendant Amador's counsel stated that his client was no longer seeking a severance from his co-defendant's for purposes of trial and

/////

/////

/////

/////

the court deems that to be a withdrawal of defendant Amador's motion to sever.[6]

**CONCLUSION**

For the reasons set forth above:

1. Defendant Amador's motion to exclude evidence of the Winnie the Pooh murder (Doc. No. 301) is DENIED;

2. The government's motion to admit enterprise and racketeering evidence (Doc. No. 351) is GRANTED; and

3. Defendant Amador's motion to sever (Doc. No. 301) has been withdrawn and is therefore terminated.

IT IS SO ORDERED.

Dated:  **July 13, 2020**                                   /s/ Dale A. Drozd
                                                                    UNITED STATES DISTRICT JUDGE

---

[6] However, at the hearing on the pending motions, Assistant U.S. Attorney Ross Pearson indicated that the government would not seek to introduce the challenged Winnie the Pooh murder evidence as to the drug conspiracy charged in Count Three of the indictment but rather would introduce that evidence only as to the VICAR offense charged in Count Two against defendant Amador. Accordingly, AUSA Pearson announced that the prosecution had no objection to the severance of Count Two from Count Three for purposes of trial. Counsel for the remaining defendants present at the hearing indicated that if the court were to admit the Winnie the Pooh murder evidence against defendant Amador as to Count Two, they would be seeking a severance of that charge for purposes of trial. The court anticipates that the remaining defendants will likely now seek a severance for purposes of trial which the government will not oppose.