1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                  No.  1:18-cr-00207-NONE-SKO

12                    Plaintiff,

13           v.                                  ORDER RE MOTIONS IN LIMINE

14    LORENZO AMADOR, et al.,                    (Doc. Nos. 273, 274, 278, 288, 289, 327, 352,
                                                 353, 438, 579, 580, 589, 591, 598)
15                    Defendants.

16

17           The court held a trial confirmation hearing and hearing on the parties' pending motions *in

18    limine* on August 26, 2021 at 9:30 a.m. via videoconference.  Attorney W. Scott Quinlan

19    appeared for defendant Lorenzo Amador; Assistant U.S. Attorneys Ross Pearson and Michael G.

20    Tierney appeared for the government.  For the reasons discussed on the record and set forth

21    below, the court rules on each of the pending motions *in limine* as follows.

22    **A.      Defendant's motion *in limine* #1**

23           Defendant's first motion *in limine* (Doc. No. 273) requests exclusion of expert law

24    enforcement testimony regarding certain topics related to gangs.  That motion is denied in light of

25    the decision in *United States v. Vera*, 770 F.3d 1232, 1238–39 (9th Cir. 2014) (allowing law

26    enforcement expert testimony on gang territories, leadership structure, and general practices)

27    (citing *United States v. Mejia*, 545 F.3d 179, 189-90, 195 (2d Cir. 2008) (discussing the line

28    between permissible and impermissible gang expert testimony and relying on numerous prior

                                             1

1  cases to confirm that various subjects, within bounds, may be appropriate subjects of expert

2  testimony, including graffiti use, codes and jargon, membership requirements, rules of conduct,

3  codes of silence, leadership structure, and general practices)).  However, these cases also stand

4  for the well-recognized proposition that an expert cannot present testimonial hearsay "in the guise

5  of an expert opinion."  *Vera*, 770 F.3d at 1238 (*citing Mejia*, 545 F.3d at 199).  The denial of

6  defendant's motion *in limine* is without prejudice to other, appropriate objections at trial,

7  including objections following defendant's *voir dire* of any government expert witness.

8  **B.**      **Defendant's motion *in limine* #2**

9  Defendant's second motion *in limine* (Doc. No. 274), concerning the foundation for expert

10  and lay opinion testimony, is granted in part, to the extent that the government must establish the

11  foundation for any expert's opinion.  This issue will be revisited during *voir dire* of any expert

12  witness called at trial by the government.  The remaining aspects of this motion are denied,

13  without prejudice.  Defendant may object at trial based upon any alleged inadequacy of the

14  disclosure required by Federal Rule of Criminal Procedure 16 or may raise trial objections based

15  on lack of foundation with respect to any lay opinion testimony offered by the government.

16  **C.**      **Defendant's motion *in limine* #3**

17  Defendant's third motion *in limine* (Doc. No. 278), requesting *Daubert* findings as to each

18  expert witness called by the government, is granted.  Specifically, the court anticipates that

19  defendant's counsel will be able to conduct *voir dire* examinations of any proposed gang expert

20  witness outside of the jury's presence immediately in advance of that witness' testimony.

21  **D.**      **Defendant's motion *in limine* #4**

22  Defendant's fourth motion *in limine* (Doc. No. 288), seeking to exclude certain statements

23  made by defendant as obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), is

24  granted in part and denied in part as explained below.[1]

25  /////

26

27  [1]  In the undersigned's view, this motion would have been more appropriately brought as a
    pretrial motion to suppress defendant's statements.  Nonetheless, the court will address the
28  motion *in limine* based upon Miranda on its merits.

1    Defendant first objects to admission of his statement, made while he was being booked

2    into custody on October 26, 2018, that his street name (i.e., his nickname) is "Katracho."[2]  The

3    issue of whether an interrogation occurs when police ask a suspect for his nickname was

4    addressed by the Ninth Circuit in *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir.

5    2006) ("Asking about a nickname, even if it is for identification purposes, is no different from

6    simply asking for a suspect's name.  Questions about a person's identity are not unconstitutional

7    even if identification of the person may help lead to the prosecution of that person for a crime.").

8    The decision in *United States v. Williams*, 842 F.3d 1143, 1149–50 (9th Cir. 2016), cited by

9    defendant here, is not directly on point.  In *Williams*, the Ninth Circuit distinguished *Washington*

10   to find inadmissible a suspect's un-*Mirandized* statement during booking that he was affiliated

11   with a gang because "gang membership may . . . expose a defendant to [specific types] of

12   criminal liability."  *Id*. at 1148.  Not so with a nickname, which is much more akin to basic

13   identifying information, such as a suspect's actual name, and therefore falls within the coverage

14   of *Washington's* holding.  This aspect of defendant's motion *in limine* is therefore denied.

15   Defendant next objects to another of his defendant's statements made during the above-

16   mentioned booking interview on October 26, 2018:  that he was affiliated with MS-13.  The

17   government concedes that this statement is inadmissible in its case in chief under the holding in

18   *Williams*, but all parties agree that the statement would be admissible for impeachment purposes.

19   Therefore, this aspect of defendant's motion *in limine* is granted, with the qualification that the

20   statement would be appropriately used for impeachment purposes.

21   Finally, defendant objects to admission of statements he made during an interrogation-

22   style interview that took place on October 25, 2018.  A transcript produced from a recording of

23   that interview (Doc. No. 377-2) reveals that defendant was read, did acknowledge, and then

24   waived his *Miranda* rights.  (*Id*. at 15–16.)[3]  Defendant does not suggest otherwise.  The

[2]  The court notes that this nickname is spelled "Katracho" in the government's opposition to the
motion *in limine* (Doc. No. 377 at 2) but is spelled "Catracho" in the government's trial brief
(Doc. No. 586 at 1).

[3]  The court's page references in this order are to the ECF page numbers, not to internal page
numbering.

3

interview proceeded with detectives inquiring about various subjects related to their investigation. Generally, while defendant Amador did engage with the investigators, he responded to their questions with general denials, making statements such as: "Well I'm telling you the truth. I don't know anything" (*id*. at 18); "I can't tell you anything because I don't know anything" (*id*. at 19); and "No, well, I don't have anything to tell you" (*id*.). The following exchange, which occurred in the middle of the ongoing questioning which consistently produced denials of knowledge from defendant, has been highlighted by defendant in his motion *in limine*:

> MORA: Lying won't help you right now, Lorenzo.
>
> AMADOR: Huh?
>
> MORA: Lies won't help you. They won't help you.
>
> MALD: Think carefully about it Lorenzo, because once we leave here, you won't have an opportunity.
>
> AMADOR: Well, I don't have anything to say. That's the only thing I have to tell you. I have nothing to say. And I'm not going to tell you anything.
>
> MALD: Why?
>
> AMADOR: Because no.
>
> MALD: You don't want to or you're afraid?
>
> AMADOR: I don't want to.
>
> MALD: You don't want to? Are you sure?
>
> AMADOR: Yes."

(*Id*. at 20.)

Defendant asserts that he invoked his right to remain silent with these statements to investigators. (Doc. No. 393 at 2–3.) When invoking the protections of the Fifth Amendment, "a suspect must do so 'unambiguously.'" *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (quoting *Davis v. United States*, 512 U.S. 452, 459, 461–62 (1994)). "If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'" *Id*. at 382 (quoting *Davis*, 512 U.S. at 461). The requirement of an unambiguous invocation of Miranda rights results in an objective inquiry that 'avoid[s] difficulties of proof and ... provide[s] guidance to officers' on how to proceed in the face of ambiguity." *Id*. at 381–82

4

1   (quoting *Davis*, 512 U.S. at 458–59).  Nonetheless, "neither the Constitution nor *Miranda* require

2   a suspect to invoke his right to silence in a particular way."  *Hurd v. Terhune*, 619 F.3d 1080,

3   1089 (9th Cir. 2010)).

4          The Ninth Circuit has, in some contexts, found phrases like "I have nothing to say" and "I

5   don't want to talk" sufficiently unambiguous to invoke the right to remain silent.  *See Jones v.*

6   *Harrington*, 829 F.3d 1128, 1132 (9th Cir. 2016) (suspect indicating "I don't want to talk no

7   more" after hours of questioning was unambiguous invocation of the right to remain silent, and

8   the state court's finding to the contrary was  "an unreasonable determination of the facts");

9   *Arnold v. Runnels*, 421 F.3d 859, 865 (9th Cir. 2005) ("[N]either the Supreme Court nor this court

10  has required that a suspect seeking to invoke his right to silence provide any statement more

11  explicit or more technically-worded than 'I have nothing to say'"); *see also United States v.*

12  *Bushyhead*, 270 F.3d 905, 912 (9th Cir. 2001) (holding that defendant's statement, "I have

13  nothing to say, I'm going to get the death penalty anyway," was a valid invocation of the right to

14  silence); *Flores v. Muniz*, 809 F. App'x 463, 464 (9th Cir. 2020) (finding that the statement "'I'm

15  done talking,' cannot reasonably be interpreted as anything except a facially unambiguous

16  invocation of the right to remain silent");[4] *United States v. Proano*, 715 F. App'x 655, 656 (9th

17  Cir. 2018) ("[d]efendant unambiguously and unequivocally invoked his right to remain silent

18  when he told the interrogating officers 'I have nothing to say'"); *Bates v. Clark*, 365 F. App'x

19  840, 841 (9th Cir. 2010) (finding the statement "I'm not saying anything right now," during

20  ongoing interrogation could not reasonably be interpreted as anything but an unambiguous

21  invocation of the right to remain silent); *see also Tice v. Johnson*, 647 F.3d 87, 107 (4th Cir.

22  2011) (defendant's statement "I have decided not to say any more" was "clear and unequivocal"

23  /////

24  /////

25  /////

26  /////

27

28  ──────────────────
    [4]  Citation to this and the other unpublished Ninth Circuit opinions cited in this order is
    appropriate pursuant to Ninth Circuit Rule 36-3(b).

                                            5

1   and meant "he no longer wished to answer questions . . . and, therefore, that the officer should

2   stop asking them").[5]

3          As the government correctly points out (Doc. No. 377 at 5), context matters in this regard.

4   Under certain circumstances, similar statements to those described above have been found

5   insufficient to invoke the right to remain silent.  *See Burgos v. Sexton*, No. 17-CV-06102-WHO,

6   2019 WL 1598221, at *10 (N.D. Cal. Apr. 15, 2019) (finding the suspect's statement "[w]ell,

7   that's the, that's, well, like I don't have like anything what to say," when viewed in context, could

8   be interpreted as an indication "that he does not have anything to add to his previous statements,

9   not that he has nothing else to say to the investigators"); *United States v. Meza*, No. 15CR3175

10  JM, 2016 WL 4479396, at *6 (S.D. Cal. Aug. 25, 2016), *aff'd*, 800 F. App'x 463 (9th Cir. 2020)

11  (a suspect's statement that "I already told you what I'm oh, what I – what happened.  What I

12  know . . . . I don't have anything to say. That's – that's all.  You've pretty much made me tell you

13  everything that I – I'm not supposed to," was insufficient and too unclear to serve as the

14  invocation of the right to remain silence because invocation "cannot, and should not, be a dodge,

15  equivocal, a mere denial of further information"); *United States v. Birdsbill*, No. CR-19-63-GF-

16  BMM, 2020 WL 6202697, at *6 (D. Mont. Oct. 22, 2020) (where the defendant answered

17  numerous questions and then stated in middle of interview "That's all I've got to tell you," the

18  statement was ambiguous because it could reasonably be interpreted to mean "that's all that I

19  remember"; "that's the best description I've got"; "I've answered your question about that"; or "I

20  don't have anything else to say on that topic"); *see also United States v. Banks*, 78 F.3d 1190,

21  1197 (7th Cir. 1996), *cert. granted, judgment vacated on other grounds sub nom. Mills v. United

22  States*, 519 U.S. 990 (1996) (finding ambiguous the suspect's statement that "I don't got nothing

23  to say," because that statement, when placed in the context of his other comments, could be

24  interpreted as something other than an invocation of the right to remain silent, namely "that it was

25  merely an angry response to the form in front of him").

26  _____

27  [5]  Defendant cites the decision in *United States v. Poole*, 794 F.2d 462, 465 (9th Cir. 1986), in which Ninth Circuit accepted as unchallenged the district court's finding that a suspect invoked his right to remain silent prior to booking by stating that he had "nothing to talk about."  But

28  *Poole* did not analyze the sufficiency of that statement to invoke the right to remain silent.

A recent First Circuit decision, *United States v. Simpkins*, is instructive on the specific issue presented here.  There, the First Circuit acknowledged that a suspect indicating that he had "nothing to say" could have been indicating that he "[didn't] wish to answer your questions," but the phrase also could have been "simply a convenient means of denying that he possessed any guilty knowledge."  978 F.3d 1, 12 (1st Cir. 2020).  The First Circuit concluded that, viewing this statement in context, the district court did not err in concluding, based on the larger context of the interview, that in saying he had "nothing to say," defendant was in fact "protesting his innocence, not asserting his right to remain silent."  *Id*.  The First Circuit even offered several examples from the record in the case before it to illustrate this point:

> For one thing, after the trooper encouraged the defendant to "think about being honest," the defendant replied:  "Sir, I have nothing to say.  I didn't do anything."  For another thing, when confronted with the discovery of the Suboxone strips, the defendant explained that: "I forgot all about that" and "[t]here's nothing to say."  Similarly, when asked to cooperate, the defendant responded:  "I have nothing to say.  I'm not part of a drug conspiracy.  You guys have the wrong guy."

*Id*. at 12 n.6.

The question here is whether the key part of the October 25, 2018 interview of defendant Amador can be interpreted in multiple ways.  Although it is a close call, the court thinks the answer to this question is no.  Defendant's statements earlier in the interview are reasonably interpreted as general denials:  "Well I'm telling you the truth.  I don't know anything" (id. at 18); "I can't tell you anything because I don't know anything" (id. at 19); and "No, well, I don't have anything to tell you" (id.).  These statements by defendant Amador were akin to those in Simpkins, where the defendant indicated he had nothing to say in the same breath as he was denying knowledge with respect to specific factual questions posed to him.  But the key exchange quoted above, and focused upon by the defense in its motion *in limine*, is different.  There, defendant indicated he didn't want to tell the investigators anything and that he therefore was not going to tell them anything and had nothing to say.  Viewing these specific statements objectively, and even in the context of defendant's earlier general denials, a reasonable officer should have realized that defendant was invoking his right to remain silent.  Accordingly,

7

1   questioning should have ceased at that point.  Any statements made after this exchange are

2   inadmissible in the government's case in chief.  Defendant's motion to *in limine* is therefore

3   granted with regard to any such statements made by him after the exchange quoted above.[6]

4   **E.     Defendant's motion *in limine* #5**

5           The court will deny defendant's fifth motion *in limine* (Doc. No. 289), based upon

6   potential best evidence rule objections as premature and without prejudice to the making of such

7   objections as are appropriate at trial.

8   **F.     Defendant's motion *in limine* #8**

9           The court will also defer ruling on defendant's eighth motion *in limine* (Doc. No. 327),

10  seeking a pretrial determination of the unavailability of defense witness Guevara, because the

11  parties represented at the hearing on the motions *in limine* that they are in communication with

12  Guevara's counsel on this matter and may be able to reach a resolution.  The parties are instructed

13  to provide the court with an update on this issue at the up-coming continued trial confirmation

14  hearing.

15  **G.     Defendant's motion *in limine* #9**

16          Defendant's ninth motion *in limine* (Doc. No. 438), which was a request to produce the

17  stabbing victim at trial, is denied as moot because the victim passed away and, accordingly, the

18  motion *in limine* was withdrawn by the defense.

19  **H.     Defendant's motion *in limine* #10**

20          In his tenth motion *in limine* (Doc. No. 579), defendant requests that the court conduct

21  individualized *voir dire* on prospective juror's knowledge of MS-13 as well as juror opinions

22  concerning "ethnic minorities entering this country."  (Doc. No. 579-1 at 6.)  This motion *in*

23  *limine* is denied without prejudice subject to renewal during jury selection.  The court declines to

24  inquire regarding the prospective jurors' opinions regarding "ethnic minorities entering this

25  country" as requested by the defense.  The court intends to generally inquire during *voir dire*

26  whether the prospective jurors have heard of, or are familiar with, the street gang referred to as

27

28  ---
[6]   For a number of reasons, issues of this nature are more appropriately addressed in the context of a motion to suppress.  Why defendant chose to raise this issue in a motion *in limine* instead of a motion to suppress is unclear.

MS-13 or Mara Salvatrucha and whether anything that they have read, heard, or learned would impact their ability to serve as a fair and impartial juror in this case.  Depending on the number and nature of responses provided by the prospective jurors, the court, after consulting with counsel, may entertain a request for individualized *voir dire* of certain prospective jurors.

## I.        Defendant's motion *in limine* #11

Defendant's eleventh motion *in limine* (Doc. No. 580), concerning late-disclosed evidence, is denied, without prejudice.  Defendant may renew this motion as to any specific piece or item of evidence that his counsel believes was produced by the government in an untimely fashion, where appropriate.  As discussed at the hearing, the court notes that if defendant establishes at trial that he has been prejudiced by any claimed violations of Rule 16, the court may determine that the appropriate remedy is to excuse the jury to address such issues, grant a defense request for a continuance to prepare and inform the jury as to why it is being excused.

## J.        Defendant's motion *in limine* #12

Defendant's twelfth motion *in limine* (Doc. No. 591), concerning the Mendota Market and related witnesses, is denied without prejudice as having been rendered moot because the government has represented that it will not seek to present the specific evidence in question at trial.  If the government's plans with respect to this evidence change, defendant may renew this objection at trial.

## K.        Government's motion *in limine* #1

The court defers its ruling on the government's first motion *in limine* (Doc. No. 352), which seeks admission of co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).  This matter will be revisited at trial in light of a more developed record.

## L.        Government's motion *in limine* #2

The government's second motion *in limine* (Doc. No. 353), concerning evidence of gang affiliation, is granted in part as follows.  The government may admit evidence of gang affiliation with respect to the drug conspiracy counts.  Defendant may renew his objection with respect to any specific aspect of such evidence.  In addition, this ruling is subject to defendant's objections concerning expert testimony on gangs.

1    **M.    Government's motion *in limine* #3**

2        The government's third motion *in limine* (Doc. No. 589), concerning admission of certain

3    purported business records, is granted.  In its motion, the government seeks a ruling that phone

4    records from AT&T and T-Mobile are self-authenticating under Federal Rules of Evidence (FRE)

5    902(11) and 902(13) and are admissible under the business-records exception to the rule against

6    hearsay, FRE 803(6).  (*Id.*)  At the hearing, defendant opposed this motion on the grounds that (1)

7    the proposed evidence is testimonial, and pursuant to the United States Supreme Court's decision

8    in *Crawford v. Washington*, 541 U.S. 36 (2004), defendant has the right to cross-examine the

9    custodians of records; and (2) the certificates accompanying the records in question here do not

10   comply with the business-record exception.

11       FRE 803(6) excepts records or regularly conducted activity from the disqualifying

12   consequence of the rule against hearsay, by providing that the following is not excluded by the

13   rule against hearsay, regardless of the declarant's availability:

14           A record of an act, event, condition, opinion, or diagnosis if:

15               (A) the record was made at or near the time by--or from
16               information transmitted by--someone with knowledge;

17               (B) the record was kept in the course of a regularly conducted
                 activity of a business, organization, occupation, or calling,
18               whether or not for profit;

19               (C) making the record was a regular practice of that activity;

20               (D) all these conditions are shown by the testimony of the
                 custodian or another qualified witness, or by a certification
21               that complies with Rule 902(11) or (12) or with a statute
                 permitting certification; and

22               (E) the opponent does not show that the source of information
                 or the method or circumstances of preparation indicate a lack
23               of trustworthiness.

24       FRE 902(11), referred to in FRE 803(6), provides that:

25               The original or a copy of a domestic record that meets the
26               requirements of Rule 803(6)(A)-(C), as shown by a certification of
                 the custodian or another qualified person that complies with a federal
27               statute or a rule prescribed by the Supreme Court.  Before the trial or
                 hearing, the proponent must give an adverse party reasonable written
28               notice of the intent to offer the record--and must make the record and

certification available for inspection--so that the party has a fair opportunity to challenge them.

Thus, FRE 803(6) and 902(11) "go hand in hand." *United States v. Kahre*, 610 F. Supp. 2d 1261, 1263 (D. Nev. 2009) (citing 5 Federal Evidence § 9:40 (3d ed.)).  Declarations filed under FRE 902(11) are the functional equivalent to live testimony, do not run afoul of the Confrontation Clause, and may therefore be relied upon in criminal cases.  *Id.*; *see also United States v. Hagege*, 437 F.3d 943, 958 (9th Cir. 2006) ("Business records fall outside the core class of 'testimonial evidence,' and thus are not subject to the absolute requirement of confrontation established in *Crawford.*"); *United States v. Siders*, 712 F. App'x 601, 602 (9th Cir. 2017).

With respect to the records from AT&T, the government has filed a declaration from Brian Faulker, who declared "under penalties of perjury by the laws of the United States of America," that he is a "Legal Compliance Analyst" at AT&T; that the records "were made at or near the time of the occurrence of the matter set forth [in the records] by, or from information transmitted by, a person with knowledge of those matters;" that the records were "kept in the ordinary course of the regularly conducted business activity of AT&T;" and that they were "made by AT&T as a regular practice[.]"  (Doc. No. 589-1 at 2.)  Defendant does not argue that these records lack indicia of trustworthiness.  In fact, Faulkner attested that AT&T's electronic process or system that produced the records produce an accurate result.  (*Id.*)

With respect to the records from T-Mobile, the government has filed a substantially similar affidavit from Susan Johnson, Custodian of Records of T-Mobile US, Inc.  (Doc. No. 589-3.)  Johnson avers that, with respect to the records attached to her affidavit,

A) Such records were made at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters;

B) Such records were kept in the course of regularly conducted business activity;

C) The business activity made such records as a regular practice; and

D) If such record is not the original, such record is a duplicate of the original.

(*Id.* at 2.)

/////

1    The language in this declaration closely tracks FRE 803(6), and defendant has not

2    indicated any lack of trustworthiness.

3    Thus, the court finds that the records from AT&T and T-Mobile are properly

4    authenticated under FRE 902(11) and are excepted from the rule against hearsay because they

5    qualify as business records under FRE 803(6).  Because they so qualify, they are non-testimonial

6    under *Crawford* and their admission does not offend defendant's rights under the Confrontation

7    Clause.  *See Hagege*, 437 F.3d at 958.  Therefore, the government's motion in limine #3 is

8    granted, with the court ruling that they will be admitted into evidence at trial without further

9    foundation.[7]

10   IT IS SO ORDERED.

11   Dated:   **September 1, 2021**

12                                                        _____
                                                         UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [7]  This ruling is without prejudice to the defense calling or questioning a witness at trial to

28   provide relevant testimony on the evidentiary value of such records with respect to the charges
     brought against defendant Amador.

12